IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| EDDIE OLIVERA, | ) | 1:04-CV-5217-OWW WMW HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND |
| | ) | RECOMMENDATIONS RE |
| vs. | ) | PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS |
| | ) | |
| JAMES A. YATES, | ) | |
| | ) | ORDER DIRECTING CLERK |
| Respondent. | ) | OF COURT TO SUBSTITUTE |
| | ) | CORRECT RESPONDENT |
| | ) | |
| _____ | ) | |

Petitioner is a state prisoner proceeding with counsel on a petition for writ of habeas corpus pursuant to 28 U.S.C. Section 2254.  This case is proceeding on the first amended petition filed June 18, 2004.

## PROCEDURAL HISTORY

On September 13, 2001, a jury found Petitioner guilty of four counts of assault with a firearm (Pen. Code § 245(a)(2) and a single count of discharging a firearm at an occupied vehicle (Pen. Code § 246.)  The jury also found true allegations that Petitioner had personally used a firearm (Pen. Code § 12022.55(a)(1)), and committed the offense as part of a criminal

street gang (Pen. Code § 186.22(b)(1)).  The court sentenced Petitioner to serve a term of 15 years to life in state prison.

Petitioner filed a direct appeal from his conviction.  On May 21, 2003, the Court of Appeal, Fifth Appellate District ("Court of Appeal"), affirmed the judgment.  Petitioner filed a petition for review with the California Supreme Court, which the court denied on July 30, 2003.

Petitioner subsequently filed five petitions for post-conviction relief in state court. All of the petitions were denied.

Petitioner filed the present action on February 2, 2004, and filed his first amended petition on June 18, 2004.  Respondent filed an answer to the petition on March 21, 2005. On July 22, 2005, Petitioner filed a motion to stay this case to allow him to exhaust his state court remedies.  The court granted Petitioner's motion on August 30, 2005, and stayed this case.  On May 25, 2007, Petitioner filed a status report, informing this court that he had exhausted his state court remedies.  Petitioner filed a second amended petition on June 22, 2007.

 On January 29, 2008, Respondent filed a motion to dismiss the second amended petition as untimely and barred by the statute of limitations.  Petitioner filed an opposition on March 24, 2008.  On March 27, 2008, Senior District Judge Oliver W. Wanger entered a memorandum opinion and order granting Respondent's motion to dismiss and dismissing Petitioner's second amended petition as barred by the statute of limitations.   Senior District Judge Wanger specifically ruled that this case would proceed only on the claims raised in the first amended petition.

Respondent having already filed an answer to the first amended petition , on March 21, 2005, the court granted Petitioner thirty days to file a traverse.  Petitioner filed his traverse on April 22, 2008.

//

2

**LEGAL STANDARDS**

<u>JURISDICTION</u>

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a);  28 U.S.C. § 2241(c)(3);  <u>Williams v. Taylor</u>, 120 S.Ct. 1495, 1504 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  In addition, the conviction challenged arises out of the Tulare  County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly, the court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting <u>Drinkard v. Johnson</u>, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA, thus it is governed by its provisions.

<u>STANDARD OF REVIEW</u>

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. <u>Williams v. Taylor</u>, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for

3

habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 123 S.Ct. 1166, 1173 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Lockyer, at 1174 (citations omitted).  "Rather, that application must be objectively unreasonable."  Id. (citations omitted).

　　　　While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction.  Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

## DISCUSSION

### Juror Misconduct

　　　　Petitioner contends that he was denied his Constitutional right to a fair trial by an impartial jury due to Juror Number Eight's revelation to the rest of the jury that he feared for his safety.  Respondent disputes this contention.

4

The Court of Appeal explained the relevant facts as follows:

> After deliberations had begun, Juror No. 8, outside the presence of the other jurors, asked the court that he be excused from the jury.  He explained that he lived in the same neighborhood as appellant and appellant's relatives, and, he stated, "I'm fearing that I'm basin my decision on my own safety.  It's not fair to Eddie to base my decision on how I feel and the safety of my family."  Juror No. 8 also told the court the following: "I  .  .  .  told [the other jurors] that I lived in the area.  I get gas there at the gas station on the corner of Bardsley and 'E' Street, and I do my grocery shopping at .   .   .  the Palace Depot, which is a grocery store [where] allegedly .  .  . this incident took place.  Talking to them, I just told them basically I live in the area and  .  .  .  I do a lot [sic] of running around that area."  The court excused Juror No. 8 from the jury.

> Thereafter, the jury returned to the courtroom.  The court asked, "in the jury room, did .  .  . (Juror No. 8) make any factual statements about why it would be difficult for him to reach a decision in this case solely on the evidence?  The foreperson of the jury responded, "He didn't indicate specifically that it had to do with the evidence, but he did give us a specific reason."  Asked what that reason was, the foreperson stated, "He fears for his safety because he lives close to where the incident occurred."

> The court then asked the foreperson and the other jurors, "Would that .   .   . expression of concern on his part affect .   .   .  any juror in reaching a decision solely on the evidence?  In other words, can all of you that are left here reach a decision in this case based solely on the evidence and without regard to  .  .  . (Juror No. 8)'s concerns?  Anyone think they have a problem with that?"  The court notes that "every single juror nodded in the affirmative that they would decide this case based only on the evidence and the law and not on anything   .   .   . (Juror No. 8) may have communicated."

> At that point, the court ordered the alternate juror seated as a member of the jury and stated: "You and the other jurors must not consider this fact that I'm seating you for any purpose as bearing upon whether the defendant is guilty or not guilty.  The People and the defendant have a right to a verdict reached only after full participation of 12 jurors who return the verdict.  This right may be assured only if you begin your deliberations again from the beginning.  You must, therefore, set aside and disregard all past deliberations and begin deliberating anew.   That means that each remaining original juror must set aside and disregard the earlier deliberations as if they had not taken place."  The court then directed the jury to retire and begin deliberating.

> After the jury retired, [Petitioner] moved for a mistrial based on the basis of Juror No. 8's statements to the other jurors.  The court denied the motion.

Court of Appeal Opinion at 1-2.

The Court of Appeal addressed the merits of Petitioner's claim as follows:

> [Petitioner] argues that Juror No. 8, in telling the other jurors that he feared for his life, "tainted" the jury's deliberations, thereby depriving appellant of his constitutional rights to a fair trial, a trial by an impartial jury and due process of law.

In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the "evidence developed" against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel.  Thus, a juror's receipt of information about a party or the case that was not part of the evidence received at trial, constitutes juror misconduct, and leads to a presumption that the defendant was prejudiced thereby and may establish juror bias.  Although inadvertent exposure to out-of-court information is not blameworthy conduct, as might be suggested by the term 'misconduct,' it nevertheless gives rise to a presumption of prejudice, because it poses the risk that one or more of the jurors may be influenced by material that the defendant has had no opportunity to confront, cross-examine, or rebut.

We assess the effect of out-of-court information upon the jury in the following manner.  When juror misconduct involves receipt of information about a party or the case from extraneous sources, the verdict will be set aside only if there appears a substantial likelihood of juror bias.  Such bias may appear in either of two ways: (1) if the extraneous material, judged objectively, is so prejudicial in and of itself that it is inherently and substantially likely to have influenced a juror; or (2) even if the information is not 'inherently' prejudicial, if, from the nature of the misconduct and the surrounding circumstances, the court determines that it is substantially likely a juror was actually biased against the defendant.    If we find a substantial likelihood that a juror was actually biased, we must set aside the verdict, no matter how convinced we might be that an unbiased jury would have reached the same verdict, because a biased adjudicator is one of the few structural trial defects that compel reversal without application of a harmless error standard.  The standard is a pragmatic one, mindful of the day-to-day realities of courtroom life and of society's strong competing interest in the stability of criminal verdicts.  It is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote.  Moreover, the jury is a fundamentally human institution; the unavoidable fact that jurors bring diverse backgrounds, philosophies, and personalities into the jury room is both the strength and the weakness of the institution.    The criminal justice system must not be rendered impotent in quest of an ever-elusive perfection.  Jurors are imbued with human frailties as well as virtues.  If the system is to function at all, we must tolerate a certain amount of imperfection short of actual bias.

In reviewing a trial court's determination that the receipt of extraneous information by one or more jurors did not prejudice a defendant, we apply the following standard: We accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence.  Whether prejudice arose from juror misconduct, however, is a mixed question of law and fact subject to an appellate court's independent determination.

As indicated above, the record indicates that Juror No. 8 told his fellow jurors that "he fears for his safety because he lives close to where the incident occurred." [Petitioner] asserts that "the only conceivable reason for that fear was [Juror No. 8's] belief that if he found [Petitioner] guilty he would be punished by people associated with appellant."  And it follows from this, appellant suggests, that members of the jury would have understood Juror No. 8's statement as a "personal attestation" that appellant committed the charged offenses, and that they would have been "powerfully influenced" by this "material outside the record."

6

However, it simply does not follow from the fact, if it were a fact, that Juror No. 8 feared retribution that he also believed that appellant was guilty as charged. Presumably, any criminal defendant likely to direct retribution against members of a jury who convicted him would do so regardless of whether he was rightly or wrongly convicted.   Thus, it is unlikely that jurors who heard one of their number express fear of retribution would interpret such an expression as one of belief in the defendant's guilt.

Indeed, it is unlikely other members of the jury could have inferred from Juror No. 8's comments anything more than that he was afraid to serve on the jury.  The only basis for his fear that he communicated to others was that he lived in the area where incidents about which the jury heard testimony took place, a fact which constitutes at most an ambiguous hint that Juror No. 8 might have had some basis for believing that [Petitioner] would be likely to attempt to exact retribution against members of the jury.  Such information, in our view, is not, when judged objectively .  .   .  so prejudicial in and of itself that it is inherently and substantially likely to have influenced a juror.

It is also significant that the remaining jurors indicated to the court that they would not be influenced by the information imparted to them by Juror No. 8. [Petitioner] suggests that such assurances are of no moment because the determination of whether prejudice has resulted from a juror's receipt of extraneous information is made independently by the appellate court. [Petitioner] has correctly characterized the legal standard we use, but his conclusion does not follow from this premise.  We accept credibility determinations, including the determination of the credibility of jurors who assert that they will not be influenced by extraneous information if supported by substantial evidence.  Thus, we accept the court's determination that the members of the jury would not be influenced by Juror No. 8's comments.  Based on this determination, the court's subsequent instructions to the jury and the nature of the extraneous information, discussed above, we see no substantial likelihood that the remaining jurors were actually biased, that is, unable to put aside their impressions or opinions based upon the extrajudicial information they received and to render a verdict based solely upon the evidence received at trial. Therefore, we conclude that no error appears in the court's denial of [Petitioner's] motion for mistrial.

Court of Appeal Opinion, 2 - 4 (citations omitted).

"In all criminal prosecutions," state and federal, "the accused shall enjoy the right to . . . trial  . . . by an impartial jury," U.S. Const., Amends. 6 and 14; see Duncan v. Louisiana, 391 U.S. 145 (1968).  In reviewing a claim of juror misconduct, "[t]he test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." United States v. Klee, 494 F.2d 394, 396 (9th Cir.), cert. denied, 419 U.S. 835 (1974). Although it is generally preferred that a trial court hold an evidentiary hearing when allegations of juror misconduct arise, it is not always required, particularly when the court

knows the exact scope and nature of the misconduct.  See United States v. Halbert, 712 F.2d 388, 389 (9th Cir.1983); United States v. Hendrix, 549 F.2d 1225, 1227 (9th Cir.1977); see also United States v. McVeigh, 153 F.3d 1166, 1187 (10th Cir.1998), *cert. denied*, 119 S.Ct. 1148 (1999).  The Court is mindful of the fact that "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." Rushen v. Spain, 464 U.S. 114, 118 (1983), *quoting* Smith v. Phillips, 455 U.S. 209, 217 (1982).  When the alleged misconduct is intra-jury, it has been widely held that the trial court is entitled to greater deference in its review, because the misconduct is less serious than extra-jury influences.  See Tanner v. United States, 483 U.S. 107, 117- 21 (1987); Smith v. Phillips, 455 U.S. 209 (1982); Remmer v. United States, 347 U.S. 227, 228-30 (1954); Mattox v. United States, 146 U.S. 140, 149 (1892); United States v. Bertoli, 40 F.3d 1384, 1393 (3d Cir.1994) ("[I]ntra-jury communications pose a less serious threat to a defendant's right to an impartial trial than do extra-jury influences, and therefore district courts are entitled to even greater deference in their responses to them than in responses to outside influences."). United States v. Ford, 840 F.2d 460, 465-66 (7th Cir.1988); Government of Virgin Islands v. Gereau, 523 F.2d 140 (3d Cir.1975), *cert. denied*, 424 U.S. 917 (1976); Fed.R.Evid. 606(b) (juror may only testify post-verdict on the question whether extraneous influence was brought to bear on jurors).  Petitioner has the burden of showing that internal juror misconduct prejudiced him. See United States v. Dutkel, 192 F.3d 893, 895 (9th Cir.1999).

In the present case, Petitioner contends that he was denied his Constitutional right to a fair trial by an impartial jury due to Juror No. 8's revelation to the rest of the jury that he feared for his safety.   Specifically, Petitioner argues that he was charged with special allegations within the meaning of California Penal Code § 186.22(b)(1) and (b)(4), that he offense was committed for the benefit of, at the direction of, and in association with a criminal street gang.   He argues that "the only reasonable inference" the other jurors could have drawn from Juror No. 8's statement that he lived in the area where the incidents took

8

place and that he feared for his safety was that Petitioner was a gang member.  Petitioner specifically asserts that Juror No. 8 would have had nothing to fear if Petitioner were not a gang member, and that this inference was highly prejudicial to Petitioner.

This court rejects Petitioner's premise that the only reasonable inference the other jurors could have drawn from Juror No. 8's statements was that Petitioner was a gang member.  To the contrary, this court finds that Petitioner has not demonstrated that the Court of Appeal's finding that it is unlikely other members of the jury could have inferred from Juror No. 8's comments anything more than that he was afraid to serve on the jury, was "an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).  Further, Petitioner's assertion that Juror No. 8 would have had nothing to fear if Petitioner was not a gang member is speculation and nothing more.

In regard to Petitioner's claim that the trial court did not hold an adequate evidentiary hearing regarding the remaining jurors' partiality, this court again rejects Petitioner's premise.  Contrary to Petitioner's claim, we are not asked to "assume" that each remaining juror nodded in the affirmative in response to the trial court's inquiry.   Rather, we rely on the facts, as found by the Court of Appeal.  As set forth above, in a federal habeas corpus proceeding, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1). Here, Petitioner has in no way rebutted the trial court's finding, accepted by the Court of Appeal, that "every single juror nodded in the affirmative that they would decide this case based only on the evidence and the law and not on anything   .   .   .   (Juror No. 8) may have communicated."  Further, Petitioner has not shown that by accepting the trial court's credibility determination, the Court of Appeal's analysis   "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).   The court concludes, therefore, that this

9

claim presents no basis for habeas corpus relief.

Sentencing Error

Petitioner contends that his sentence is unlawful in that the sentencing court improperly ordered a full determinate term consecutive to his indeterminate term. Respondent disputes this contention.

The Court of Appeal found the following facts in regard to this contention:

> [T]he court imposed a determinate term of seven years on count 1, consisting of the three-year midterm on the substantive offense and four years on the gun use enhancement, consecutive to the indeterminate term of 15 years to life imposed on count 5. [Petitioner] contends the trial court erred in imposing a full consecutive term on count 1.  Rather, he argues, the term for count 1 should have been treated as a "subordinate term" within the meaning of Section 1170.1, resulting in a sentence of one-third of the middle term on the substantive offense plus one-third of the four-year term prescribed for the firearm use enhancement.  We disagree.

Court of Appeal Opinion at 4.

In addressing the merits of Petitioner's claim, the Court of Appeal held as follows:

> If a defendant is convicted of multiple felonies and the sentencing court imposes consecutive terms, subdivision (a) of section 1170.1 specifies the normal method for calculating the overall prison term.   It provides, with certain exceptions, that the greatest term of imprisonment imposed for any of the crimes is designated the "principal term" and any term consecutive to the principal term is a "subordinate term."   It also provides , with certain exceptions, that subordinate terms "shall consist of one-third of the middle term .   .   . and shall include one-third of the term imposed for any specific enhancements applicable to those subordinate offenses.

> "However, this scheme fully applies only when all terms of imprisonment are 'determinate,' i.e., of specified duration.   A life sentence is 'indeterminate,' i.e., not for a fixed period.  When a defendant is sentenced to both a determinate and an indeterminate sentence, the determinate sentence is served first.  Nonetheless, neither term is 'principal' or 'subordinate.'  They are to be considered and calculated independently of on another." (*People v. Reyes* (1989) 212 Cal.App.3d 852, 856, 260 Cal.Rptr. 846; accord, *People v. Day* (1981) 117 Cal.App.3d 932, 173 Cal.Rptr. 9; *People v. McGahuey* (1981) 121 Cal.App.3d 524, 175 Cal.Rptr. 479.)  This principle is based in large part on California Rules of Court, rule 4.45(a), which provides: "When a defendant is sentenced under section 1170 and the sentence is to run consecutively to a sentence imposed under section 1168 in the same or another proceeding, the judgment shall specify the determinate term imposed under section 1170 computed without reference to the indeterminate sentence, shall order that the determinate term shall be served consecutive to the sentence under section 1168, and shall identify the proceedings in which the indeterminate sentence was imposed   The term under section 1168, and the date of its completion or parole date, and the sequence in which the sentences are deemed served, will be determined by correctional authorities as provided by law."

[Petitioner] acknowledges that *Reyes, Day* and *McGahuey* are contrary to his position, and that rule 4.451(a) supports the result reached in those cases. [Petitioner] argues, however, that *Reyes*, *Day*, and *McGahuey* are wrongly decided because, he asserts, rule 4.451, the "only authority that supports" those decisions, conflicts with the plain language of section 1170.1." Under section 1170.1(a), he notes, the principal/subordinate term sentencing scheme set forth in that statute applies when a defendant is convicted of multiple felonies "and a consecutive term of imprisonment is imposed under Sections 669 and 1170 . . ." Under [Petitioner's interpretation of section 1170.1(a), "a consecutive term" is synonymous with a single consecutive term, i.e., he argues that a court must sentence under section 1170.1(a) whenever it imposes consecutive sentences, regardless of whether one or more of those sentences is an indeterminate term, if at least one of those sentences is a determinate term. There is no merit to this claim.

The Advisory Committee Comment to former rule 451 provides in pertinent part, as follows: "The provisions of section 1170.1(a) limiting consecutive terms to a 'subordinate term' consisting of one-third of the middle terms for the additional crimes (in some cases plus on-third the enhancements) can logically be applied only when all the sentences were imposed under section 1170. Indeterminate sentences under section 1168 will continue to be imposed for some years, considering probation violators. Since the duration fo the indeterminate term cannot be known to the court, subdivision (a) sets forth the only feasible mode of sentencing." As the Advisory Committee indicates, appellant's interpretation of section 1170.1(a) would lead to absurd results. Therefore, we agree the authorities cited above that when both determinate and indeterminate sentences are imposed consecutively, section 1170.1 does not apply. Accordingly, the court did not err in imposing a fully consecutive term on count 1.

Court of Appeal Opinion, 5 - 6.

Petitioner now repeats his claim, contending that his federal due process rights have been violated because the State of California did not follow its own sentencing laws in imposing fully consecutive terms on him. A federal court has no basis for disputing a state's interpretation of its own law. <u>Clemons v. Mississippi</u>, 494 U.S. 738, 739-40 (1990); <u>see Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990) (federal habeas court must respect a state court's application of its own law and must not engage in *de novo* review). A determination of state law by a state appellate court is binding in a federal habeas action, <u>Hicks v. Feiock</u>, 485 U.S. 624, 629 (1988), unless the interpretation is an "obvious subterfuge to evade consideration of a federal issue." <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691 n. 11 (1975). Petitioner's claim addresses the manner in which his sentences were imposed within the framework of California's determinate and indeterminate sentencing laws, and Petitioner does not

11

demonstrate any subterfuge in the Court of Appeal's analysis.  Thus, this claim presents no basis for habeas corpus relief.

Based on the foregoing, IT IS HEREBY RECOMMENDED as follows:

1)      that this petition for writ of habeas corpus be DENIED;

2)      that a certificate of appealability be DENIED;

3)      that the Clerk of the Court be directed to enter judgment for Respondent and to close this case.

These Findings and Recommendation are submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

12

**Dated:** __February 2, 2009__                    ___/s/  William M. Wunderlich___
                                                  UNITED STATES MAGISTRATE JUDGE